SAM HORNE MOTOR AND IMPLEMENT COMPANY, Inc., and J. L. Spangler, Appellants,

v.

Ruth GREGG, Appellee.

Court of Appeals of Kentucky.

May 20, 1955.

Henry L. Bryant, Pineville, for appellants.

Smith, Denham & Gillis, Middlesboro, for appellee.

CLAY, Commissioner.

Plaintiff suffered personal injuries when the automobile in which she was riding as a passenger collided with one driven by defendant Spangler. She recovered a judgment for $6,000 against both Spangler and his alleged employer, the defendant company.

The principal contention on this appeal is that Spangler was an independent contractor and therefore the defendant company was not liable.

Spangler was an automobile salesman who was compensated on a commission basis. He was authorized to take automobiles from the company's used car lot for demonstration purposes. He had been instructed not to take a vehicle from the lot unless he had a prospect with him, and not to demonstrate one after 5:30 p. m. He was not authorized to close any sale, this being done by officials of the company.

The accident happened about 7:00 p. m. Spangler was taking one of the company cars home for the purpose of demonstrating it the next morning to his son-in-law who was spending the night with him. He was not acting on any specific instructions, and there was no proof of supervision by the company with respect to the hours he worked, who he interviewed, or how he demonstrated an automobile to prospective buyers.

Many factors enter into the determination of whether or not at the time a tort is committed a person is the servant of another or is an independent contractor. It is not necessary that the person occupy the same position with respect to another at all times or for all purposes. The question always concerns the nature of the relationship at the time the injury occurred.

In Restatement of the Law, Agency, Section 220(2), are set forth the nine most significant facts to be considered in determining whether one acting for another is a servant or an independent contractor. They are:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer; and

"(i) whether or not the parties believe they are creating the relationship of master and servant."

We will leave (a), the matter of control, to later discussion because it is closely inter-related with the other aspects of the relationship. Concerning the other factors, let us examine Spangler's relationship to the defendant company.

(b) Spangler was not engaged in a distinct occupation or business. While he was employed part-time by another company, he had no independent business of his own. Under this test his position is more that of an agent or servant than an independent contractor.

(c) With respect to the kind of occupation, it cannot be said that Spangler was a specialist with unusual training and skill. This seems evident because of the fact that he was not authorized to complete transactions with prospective buyers. As a matter of fact, he could not complete a specific job of selling an automobile, and in that respect the work was definitely under the direction of defendant company. The ap-

plication of this test indicates the master-servant relationship.

(d) The question of the skill of Spangler is answered by what we have just said.

(e) Clearly the defendant company furnished the instrumentality and the place of Spangler's work. When working for it he would normally be either on the company's lot or in one of its automobiles. This seems a most important consideration in this case for the reason that the instrumentality causing the injury was not only owned by the defendant company but its use at the time was for the specific and only purpose for which Spangler was employed. In the traveling salesmen cases the vehicle usually involved is a means of transportation. The automobile here involved was more than a means of transportation, its prospective sale for the company being the very object of its use. This use will be further discussed when we consider the matter of control.

(f) With respect to the length of time for which Spangler was employed, the terms thereof are not shown in this record. It is evident to us that the relationship between him and the company could be terminated by either at will because of the nature of the services performed by Spangler. In Bowen v. Gradison Construction Company, 236 Ky. 270, 32 S.W.2d 1014, we pointed out that the right of the employer to terminate the employment at any time may be incompatible with the independent contractor relationship.

(g) With respect to the method of payment, it must be conceded that Spangler was paid by the job, which would be the completed sale of a motor vehicle. This test indicates the existence of the independent contractor relationship.

(h) Clearly Spangler's work was a part of the regular business of the defendant company. They were both engaged in the same business and Spangler's rights, duties and responsibilities were of a subordinate character. This tends to put him in the category of an employee.

(i) In a letter written by the highest official of the company to its local manager concerning the use of the company's automobiles for demonstration purposes, Spangler appears to have been classed with the other "employees" of the company. While the intention of the parties is not controlling, this fact indicates the parties believed the relationship of master and servant existed.

Considering all of the factors above mentioned, it is evident that Spangler may be more fittingly characterized as an employee or servant than as an independent contractor. This brings us to the question of control by the company, which is probably the most significant consideration because by exercising the right of control the employer is afforded a means of protecting himself from such liability as is here sought to be imposed. See Bowen v. Gradison Construction Company, 236 Ky. 270, 32 S.W.2d 1014, above cited.

Defendant company relies principally upon the case of Shedd Brown Mfg. Co .v. Tichenor, Ky.1953, 257 S.W.2d 894. Therein we held that a traveling salesman who used his own automobile in soliciting orders for a foreign corporation was not such an agent of the corporation as would make it liable for a tort committed by the salesman when using the vehicle. About the only similarity between that case and the present one is that the salesman was paid on a commission basis and the home office finally accepted or rejected proposed sales. In view of the fact that the salesman in the foregoing case used his own automobile and had an independent business of his own, it was decided that the corporation had neither actual nor potential control of the salesman, the particular trip involved, or the instrumentality which caused the injury.

As pointed out in that case and as generally accepted, the *right of control* is the important question. In analyzing this factor it is well to bear in mind that the right and extent of control are closely related to the nature of the work being performed. It seems evident that the selling of used cars is not the type of occupation wherein the employer would be expected to, or could

with any degree of practicability, exercise close supervision over the details of selling. Actual and intimate control of the employee is not necessary in the performance of the work, and of course we do not have such element here.

On the other hand, surely the defendant company had a right to control the activities of Spangler, particularly with respect to the use of its own automobiles. This right of control is shown by the fact that the company did have rules and regulations with respect to the circumstances under which automobiles were to be taken from its lot and with respect to the time when they were to be used. It may be said that *inherent in the relationship* was the right of the company to forbid the taking of any automobile at any time or to direct the use of its automobiles only on particular trips.

As pointed out in the case of American Sav. Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S.W.2d 115, where the use of an automobile at the time of an accident is of vital importance in furthering the business of the alleged employer, actual or potential control of this instrumentality may reasonably be inferred. We are of the opinion that the ownership of this automobile and the nature of its use at the time of the accident, coupled with the other elements of employment, are sufficient to create a master-servant relationship, imposing liability on the defendant company for the act resulting in injury to the plaintiff.

Our conclusion is the same as that reached by the appellate courts of Missouri and Minnesota on almost identical facts in the cases of Borah v. Zoellner Motor Car Co., Mo.App., 257 S.W. 145; and Fostrom v. Grossman, 161 Minn. 440, 201 N.W. 929.

Defendant company next contends that conceding Spangler to be an employee, he deviated from the course of his employment when he took the automobile after working hours in violation of the company's instructions. There are two answers to this contention. First, there is evidence (by way of prior statements made by Spangler) that the manager of defendant company had given him special permission

to take this automobile on that particular evening. Second, we do not think the violation of a general rule of the company constituted a deviation from Spangler's course of employment in view of the fact that the automobile was taken in furtherance of the company's business for the very purpose for which Spangler was employed. The jury was certainly justified in finding that Spangler at least had implied permission to take this automobile on this particular occasion.

■ Both defendants suggest that plaintiff was contributorily negligent. We find no evidence of this in the record. Even so, the court gave the jury an instruction offered by the defendants on the issue of contributory negligence. Surely defendants could not have been entitled to more beneficial treatment on this question.

■ Finally defendants complain of the instructions given to the jury. The objections are hypertechnical, and in our opinion the significant issues in the case, including every defense relied upon by the defendants, was fairly presented to the jury.

The judgment is affirmed.